Allen *v.* Henley.

2L 141
12L 380
14L 418
4pi 23

## ALLEN *v.* HENLEY *et als.*

**SURETY.** *Subrogation of to rights of creditor.* A surety is entitled to a credit on the debt of his principal to the extent of the value of securities given by the principal to the creditor, and this whether the securities were given before or after judgment against them by the creditor. The question to be solved in such a case is, was the security actually given to and accepted by the creditor, and was it lost or abandoned, or did it become worthless by the negligence of the creditor? If so, the surety would be entitled to a credit to the extent of the injury resulting from such conduct.

### FROM SUMNER.

Appeal from the Chancery Court. H. H. LURTON, Chancellor.

J. J. TURNER for complainant.

W. S. MUNDY for defendant.

FREEMAN, J., delivered the opinion of the court.

This bill is filed to enjoin an execution based on a judgment for $439.75, rendered February 11, 1860.

The bill seeks relief against alleged usury, together with costs and commissions of an officer, one Lane, which are said to be included in the judgment. Said costs and commissions arose by means of a former judgment which had been satisfied by giving a new note, in which they were included, on which the judgment sought to be enjoined is founded.

Allen *v.* Henley.

The complainant is the accommodation indorser of one Barry, on the note spoken of, which note was made for sale and to raise money on, and was not a real transaction.

There was no demurrer to the · bill, so that no question is raised as to opening the matter of . usury after judgment.

On this branch of the case there is no serious difficulty. It is very clearly made out, that a large amount of usury is included in the judgment, the original note being for $305, which in a little over two years was increased to $439.75, when last note was given, and judgment had. The proof shows very satisfactorily that not only the usury, but costs and commissions of the officer Lane, were included in the judgment.

The complainant is entitled to, and must have an account of the usury in the transaction, together with the costs and commissions of Lane, and these must, when ascertained, be deducted from the amount of the judgment, reducing it by these sums.

The next question is, whether complainant is entitled to be relieved or credited by the amount of a fee due Barry, his principal, from one May, for services in the chancery court at Gallatin, .amounting to $300 It is claimed that complainant was urging the collection of this debt, Barry being then good; that an execution had been issued and was in the hands of Lane at the time; that at this time Barry transferred, or agreed to transfer this fee of $300 due him, and decreed to be paid out of a large fund in the hands

of the clerk and master, to Woodward, or Lane for him, and in consideration of this complainant Allen, the indorser, agreed the execution might be held up, and that this was done, Lane agreeing to look after and collect the fee, and appropriate it to the payment of this judgment *pro tanto.* It is shown that the fee was one that could have been realized by diligence, and it is claimed that for want of this it has not been realized by Woodward, but was permitted, after the war, to be collected by Barry, and used by him, and to this extent the complainant has been injured.

No authority need be cited for the rule that, if the creditor has taken a security from the principal debtor, whether in the form of mortgage, lien, or assignment of collaterals, such security inures to the surety or an accommodation endorser.

It is equally clear that if the creditor shall release such security, or it is rendered useless or inoperative for the discharge of the debt, by the negligence of the creditor, that the surety or accommodation endorser is entitled to be discharged from his liability to the extent of the security thus released, or lost by the negligence of the principal. While the creditor is not bound to active diligence in enforcing his debt, mere delay not releasing the surety, yet he cannot abandon any security he may have obtained for the debt, to the injury of the surety, and without his consent, without giving the surety the right thereby to claim a credit to the full amount of the benefit thus sur-

rendered or abandoned. Am. L. Cases, Ed. 1871, vol. 2, p. 394, and cases cited.

A contract for delay, after judgment has been held not to release the surety, simply because he is not injured thereby, having the right under our statutes to judgment over against his principal immediately, and the right to reimburse or secure himself at once by execution against his property. *Bryant* v. *Rudisell et als.*, 4 Heisk., 656. This principle has no application to the case of release of securities given for the payment of the debt, because the rights of the surety in such case rest on the ground of being entitled to be subrogated to the place of the creditor, on payment of the debt, and he has this right as well after as before judgment, of which the creditor cannot deprive him, as has been repeatedly held.

In view of these well settled principles, the question before us must be solved. Was there a transfer of, or an obtention of a security on the part of the creditor, that is, the $300 fee referred to, as security for, and to be applied to the payment of the debt, and was that security lost, abandoned, or by negligence of the creditor failed to be realized, so that the surety was thereby injured to this extent?

A short statement of the circumstances of the case is necessary, before examining the proof on this question.

The record shows that Woodward was a married man, living in an adjoining county; that he furnished money to Lane, an active constable of Sumner county, to be invested by him in notes, at a discount of $12\frac{1}{2}$

per cent. Lane was his agent to the fullest extent in these transactions, managing them as his judgment dictated, for the mutual profit of both parties — the constable getting costs and commissions for collection of the notes so purchased. The probabilities are, if it is not certainly shown, that the license to shave notes as a privilege, required by our statutes, was taken out in the name of the officer. The proof makes it pretty clear, that while he was but the agent of Woodward, and as such accountable to him for the monies furnished and their prudent investment, as to parties with whom he dealt, he stood in the position of one having the right to make such contracts in reference to the paper purchased, and to secure it, as he deemed best. The whole management of the business was intrusted to him in Sumner county, Woodward coming to his house once or more each year and having a settlement of their accounts, but giving no further attention to the business.

The evidence of having received this security, the fee of Barry due from May, is about as follows: In October, 1860, an execution was issued on this judgment to Lane, the constable and agent of Woodward, which he seems never to have returned to the office of the magistrate, but died during the war, leaving it among his papers. After this bill was filed it was found, with the following indorsement on it, in the handwriting of Lane, signed by him officially, as constable of Sumner county:

"T. Barry promised me, or did transfer a fee due him by R. May in chancery court for three hundred

10—VOL. 2.

dollars, at which time B. F. Allen as security agreed it should be held up by the agreement of T. Woodward, plaintiff. I held it up until the stay law and general suspension of business prevented me from collecting it. I then made the necessary return upon it.

"March 9, 1860. WM. R. LANE, C. S."

In addition is the return:

"Not satisfied, and returned to office for restayor.
"July 9, 1861. W. R. LANE, C. S."

This indorsement of Lane shows only that there was agreement or promise to transfer, although it is said "or did transfer," and the other proof shows that no such transfer was ever effectuated. Barry says he has no recollection of the circumstances, but from the indorsement he has no doubt he did agree to transfer this fee. He adds, that if he had been called on, he would certainly have assigned the fee on the docket of the court, or given an order to the clerk and master to Lane for it—but no such thing was asked. The fact is, no doubt, that upon his promise to do it, Lane and Allen the complainant, both Barry's friends, let the matter rest, and so it was neglected until the war suspended business, and the matter was forgotten. Allen no doubt trusted his friend Mr. Barry, and believed he would assign the fee, and that Lane would collect it, and so rested easy. But if he has suffered loss, he must credit it to his over-confidence and want of diligent attention to his own interest in the premises. He might easily have had the order to the clerk and master for the money or an assignment of the debt, or insisted on having the money made. He

Allen *v.* Henley.

had the right to have had judgment against his principal from rendition of the judgment, and thus secure himself. Neglecting all this, it is his misfortune to have lost an opportunity to have had indemnity against his liability, which by more earnest diligence might have been secured, and have inured to his benefit.

But this is all that can fairly be said of the case. There having been no transfer of, or legal control over the fee or debt obtained by the creditor, he can not be charged with negligence in not making available, so as to relieve the surety. We do not think there is anything in the other matters presented in argument on which relief can be granted complainant.

The result is, the decree of the chancellor will be reversed, and decree entered here in accordance with this opinion. Costs of court below will be paid by Woodward—of this court, one-half by Allen, and other half by Woodward. Future costs will be adjudged by Chancellor.

Remand the case for the account of usury, and costs and commissions of officer included in judgment.